RECEIVED
USDC, WESTERN DISTRICT OF LA
TONY R. MOORE, CLERK
DATE 9/30/14

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA DIVISION

| | |
|---|---|
| **PROGRESSIVE EXPRESS INSURANCE COMPANY** | CIVIL ACTION NO. 13-2854 |
| VERSUS | JUDGE DRELL |
| **ALL SEASON DISASTER RELIEF, INC., RUIZ ESPARZA, LAWRENCE MELANCON, SAUL MARAMDA MONTALVO, PHILIP ORTEGO and THERESA ORTEGO** | MAGISTRATE JUDGE KIRK |

R U L I N G

Before the court is plaintiff's motion for summary judgment (Doc. # 16) seeking summary judgment as to the policy limits at issue in the above-captioned declaratory judgment action. For the reasons expressed herein below, the court finds that plaintiff's motion should be DENIED.

I.  BACKGROUND

Relevant Facts

This suit is a declaratory judgment action filed by plaintiff Progressive Express Insurance Company ("Progressive") seeking declaratory judgment regarding the policy limits of a commercial automobile insurance policy issued in favor of defendant All Season Disaster Relief, Inc. ("ASDR"). In 2008, ASDR submitted an application for insurance to Progressive through its

1

broker, Accurate Insurance Group ("Accurate") of Miami, Florida.[1] The application requested commercial automobile liability coverage at $100,000 combined single limit.[2] Progressive issued a Florida Commercial Auto Policy in favor of ASDR bearing policy number 06570051-0, effective August 22, 2008 to August 22, 2009.[3] The policy was renewed on August, 22, 2009, assigned policy renewal number 06570051-1 and was effective August 22, 2009 to August 22, 2010.[4]

The declarations pages of both the policy and the renewal provide for $100,000 combined single limit per occurrence.[5] On September 10, 2008, ASDR entered into a contract with Cajun Sugar Cooperative, Inc. ("CSC") whereby ASDR agreed to transport CSC's sugar cane harvest.[6] According to the terms of the contract, ASDR was required to maintain liability coverage with combined single limit no less than $1,000,000 per occurrence for bodily injury and property damage.[7] The contract also required that ASDR's commercial liability policy was to name CSC as an additional insured.[8]

On October 8, 2008, Accurate faxed two ACORD Certificates of Liability Insurance to ASDR. One certificate was dated October 8, 2008 and the other was dated October 9, 2008. Each certificate listed CSC as an additional insured under the Progressive policy issued to ASDR, but listed a $1,000,000 combined single limit on that policy.[9] Though these certificates referenced the correct Progressive policy number issued in favor of ASDR, the effective dates of

---

[1] R. 27-2.
[2] Id. at p. 2.
[3] Certified copy of Progressive policy at R. 16-6.
[4] Id.
[5] Id. at pp. 2, 88.
[6] R. 16-7.
[7] Id. at ¶ 3.
[8] Id. at ¶ 3.
[9] R. 16-8.

the policy cited on each certificate (February 6, 2008 – February 6, 2009 and February 6, 2008 – February 8, 2009, respectively) did not correspond to those of ASDR's policy: August 22, 2008 – August 22, 2009.[10]

On September 29, 2009, Progressive issued a Certificate of Insurance to CSC naming CSC as an additional insured on the ASDR policy and listing the combined single policy limit as $100,000.[11] On October 3, 2009, Progressive issued an Additional Insured Endorsement to ASDR naming CSC as an additional insured and citing the policy's combined single limit of $100,000.[12]

On February 18, 2009, a Certificate of Insurance prepared by Otto-Oliva, Inc. d/b/a Sunset Property ("Sunset") was faxed to ASDR by "an unknown sender." The certificate listed CSC an additional insured and certificate holder and listed the combined single policy limit as $1,000,000 with effective dates of February 9, 2009 – February 9, 2010.[13] On May 21, 2010, Brown & Brown Insurance produced and faxed to ASDR a Certificate of Insurance listing CSC as an additional insured and certificate holder and listed the combined single policy limit as $1,000,000 with effective dates of May 21, 2010 – May 21, 2011.[14]

This declaratory judgment action was filed by Progressive in response to two underlying suits filed against ASDR and Progressive arising out of two (2) separate automobile accidents occurring in 2009. The "Melancon suit" was filed on October 8, 2010, asserting claims arising out of an automobile accident between Lawrence Melancon and Ruiz Esparza, who was in the

---

[10] Id.
[11] R. 16-6 at p. 101.
[12] Id. at p. 119.
[13] R. 16-9.
[14] R. 16-10.

course and scope of his employment with ASDR at the time of the collision.[15] The "Ortego suit" was filed on October 6, 2010, asserting claims arising out of an automobile accident between Philip and Teresa Ortego and Saul Maramda Montalvo, also in the course and scope of his employment with ASDR at the time of this collision.[16] Progressive is named as the defendant insurer in both the Melancon and Ortego suits and the same commercial automobile insurance policy is at issue in both suits.  The purpose of Progressive's declaratory judgment action is to obtain a judgment from this court specifying the policy limits of that commercial automobile insurance policy in order to avoid the risk that the same policy may be interpreted inconsistently among the two Louisiana district courts in which the Melancon and Ortego suits are pending.[17] We have previously considered a Motion to Dismiss by defendant Lawrence Melancon in this matter and, for the reasons expressed in the Report and Recommendation issued by Magistrate Judge Kirk, denied such motion, agreeing with Progressive that this court is a proper venue for the relief sought.[18]

Having received and reviewed all necessary briefs in this matter and finding the matter properly before the court for decision, we address the law and argument advanced by the parties below.

---

[15] R. 16-3 at p. 2.
[16] Id.
[17] The Melancon suit was filed in Louisiana's Sixteenth Judicial District Court for the Parish of Iberia, while the Ortego suit was filed in Louisiana's Twelfth Judicial District Court for the Parish of Avoyelles. See Melancon and Ortego suit petitions at R. 16-4, -5.
[18] R. 33, 36.

**Applicable Standard**

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[19] A dispute of material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.[20] We consider "all evidence in the light most favorable to the party resisting the motion."[21] It is important to note that the standard for a summary judgment is two-fold: (1) there is no genuine dispute as to any material fact, and (2) the movant is entitled to judgment as a matter of law.

**ANALYSIS**

Progressive's motion asserts that no genuine issue of material fact exists as to the policy limits of the commercial automobile insurance policy it issued in favor of defendant ASDR and, accordingly, summary judgment should be granted in its favor. Specifically, Progressive asserts that the policy at issue (and its renewal) bear combined single liability limits of $100,000 and seek a summary declaratory judgment from this court to that effect. Progressive preemptively asserts that, though various brokers issued Certificates of Insurance erroneously citing the wrong policy limits and effective dates, the language of these certificates and Louisiana jurisprudence establishes that these certificates do not change the substance of the insurance policy itself as to coverage.

---

[19] Fed. R. Civ. P. 56(a).
[20] Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).
[21] Seacor Holdings, Inc. v. Commonwealth Ins. Co., 635 F.3d 675, 680 (5th Cir. 2011) (internal quotations omitted).

5

In response to Progressive's motion, the Melancon defendants chose to file a Motion to Dismiss, which has already been denied by this court, but have not filed any opposition to summary judgment.[22] Accordingly, we find opposition to Progressive's motion only from the Ortego defendants.[23] Seemingly conceding the issue of the faulty insurance certificates, defendants assert that two (2) provisions of Louisiana law create genuine factual disputes regarding the operative policy limits in this matter. First, defendants cite La. R.S. 32:900(M)(1)(b) which, they argue, when read with the policy's own "out-of-state coverage extension" requires that the policy be reformed to provide for a minimum single limit of $300,000. Next, defendants cite La. R.S. 45:163, which, they argue, requires contract carriers to provide liability coverage in the amounts of $250,000 for injury or death to a single person, not to exceed $500,000 per occurrence and $10,000 property damage.

Progressive responds by denying that La. R.S. 45:163 is applicable to this case. Progressive contends that ASDR is specifically exempted from the requirements of that statute because (1) it was not engaged in the transport of "persons, household goods or waste" as defined in La. R.S. 45:162 and (2) is clearly within the class of transport vehicles intended to be exempted under La. R.S. 45:172, which provides that the provisions of La. R.S. 45:163, inter alia, will not apply to "the transportation of agricultural products…" Progressive urges the court to declare the policy limits to be as stated in the policy, $100,000, but contends that any reformation of the policy could only be made under La. R.S. 32:900(M)(1)(b).

As a preliminary matter, we agree with Progressive that the faulty certificates issued by various brokers did not alter the policy limits in this case. La. R.S. 22:881 provides that

---

[22] R. 25, 33, 36.
[23] R. 18.

6

> [e]very insurance contract shall be construed according to the entirety of its terms and conditions as set forth in the policy, and as amplified, extended, or modified by any rider, endorsement, or application attached to or made a part of the policy.

As expressed by Louisiana's Third Circuit Court of Appeal in <u>Citgo Petroleum Company v. Yeargin, Inc.</u>,[24] a certificate of insurance is not a "rider, endorsement or application" and, therefore, may not be used to modify the coverage afforded by a policy of insurance. Thus, we would reject any argument that the policy at issue bore a combined single limit of $1,000,000 based on the certificates of insurance described in our factual recitation above.

As asserted by defendants, the policy at issue contains the following "out-of-state coverage extension" which provides

> [i]f an accident which this Part I applies occurs in any state, territory, or possession of the United States of America, Puerto Rico, or any province or territory of Canada, other than the state in which an insured auto is principally garaged, and the state, province, territory or possession has:
>
> 1. a financial responsibility or similar law requiring limits of liability for bodily injury or property damage higher than the limits shown on the Declarations Page, this policy will provide the higher limit; or
>
> 2. a compulsory insurance or similar law requiring a non-resident to maintain insurance whenever the non-resident uses an auto in that state, province, territory or possession, this policy will provide the greater of:
>
>    a. the required minimum amounts and types of coverage; or
>
>    b. the Limits of Liability under this policy.[25]

---

[24] 690 So.2d 154, 164 (La. App. 3 Cir. 1997).
[25] R. 16-6 at p. 230.

The vehicles insured under the policy at issue in this case were all "garaged" in Florida.[26] The 2009 accidents both occurred in Louisiana, bringing them within the ambit of the above-cited coverage extension. The court has before it a copy of the Ortego accident report, showing that the ASDR vehicle involved in that accident was noted by the reporting officer to weigh approximately 75,000 pounds.[27] We have no copy of the Melancon accident report and, again, have received no opposition to the instant motion from the Melancon defendants.

La. R.S. 32:900(M)(1)(a) provides that

> [e]xcept for those tow trucks carrying liability coverage under the provisions of R.S. 32:1717, for those motor vehicles owned or operated by persons engaged in the business of actual farming and used primarily, but not exclusively, in carrying farm produce from farm to market or returning therefrom carrying goods and merchandise back to the farms, individually or cooperatively, **where such carrying is not primarily for hire**, or for motor vehicles being used for the transportation of forest products in their natural state, every motor carrier as defined in R.S. 32:1(37) shall be covered by a liability policy. Public liability and property damages insurance on motor carriers operating a vehicle that has a gross combined weight rating in excess of twenty thousand pounds shall have the following liability limits…
>
> (b) Those vehicles with a gross vehicle weight of more than fifty thousand pounds shall provide a combined minimum single coverage limit of three hundred thousand dollars or the equivalent coverage of one hundred thousand dollars for injury or death to any one person, with a required minimum of not less than three hundred thousand dollars per occurrence, and twenty-five thousand dollars property damage. Emphasis added.

Though not raised by Progressive, the court finds that two (2) issues prevent determination of the application of La. R.S. 32:900(M)(1)(b). First, while do have for our

---

[26] See, e.g., Id. at pp. 19-20.
[27] R. 28-2.

consideration a copy of the Ortego accident report, citing the weight of the ASDR vehicle involved in that collision at approximately 75,000, we have no copy of the Melancon accident report.[28] As explained above, the Melancon defendants have not opposed the instant motion. While Subsection (M)(1)(b) prescribes the required liability insurance for vehicles over 50,000 pounds, Subsection (M)(1)(a) makes different provisions for lighter vehicles. Without evidence of the characteristics of the vehicle involved in the Melancon collision, the court cannot determine which provision might apply.

Moreover, we find the highlighted language above in R.S. 32:900(M)(1) creates, at least, a genuine dispute of material fact regarding whether the statute would apply to the ASDR vehicles at issue in this case at all. The evidence before the court may fairly be viewed as presenting an argument that the ASDR vehicles were hired farm to market carriers specifically exempted from this provision. We need not determine the applicability of the statute in order to determine whether Progressive has borne its burden of proof in this motion, however. Based on our findings, the court deems summary judgment inappropriate and declines to make any ruling as to the policy limits of the Progressive policy issued in favor of ASDR and CSC at this time, instead preserving all issues for further proceedings consistent with this ruling.

Accordingly, plaintiff's Motion for Summary Judgment (Doc. # 16) will be DENIED.

Alexandria, Louisiana
September 30, 2014

DEE D. DRELL
UNITED STATES DISTRICT JUDGE

---

[28] R. 28-2.